NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


VENICE HMA, LLC d/b/a VENICE ) 
REGIONAL MEDICAL CENTER, ) 
 ) 
    Appellant, ) 
 ) 
v. )     Case No. 2D13-5752
 ) 
SARASOTA COUNTY and SARASOTA ) 
COUNTY PUBLIC HOSPITAL DISTRICT, ) 
 ) 
    Appellees. ) 
 )
 ) 
SARASOTA DOCTORS HOSPITAL, INC. ) 
and ENGLEWOOD COMMUNITY ) 
HOSPITAL, INC., ) 
 ) 
    Appellants, ) 
 ) 
v. )     Case No. 2D13-5753
 ) 
SARASOTA COUNTY and SARASOTA ) 
COUNTY PUBLIC HOSPITAL DISTRICT, )     CONSOLIDATED
 ) 
    Appellees. ) 
 )

Opinion filed August 14, 2015.

Appeals from the Circuit Court for
Sarasota County; Kimberly Bonner, Judge.

Geoffrey D. Smith, Timothy B. Elliott, Kara
L. Gross, and Susan C. Smith of Smith &
Associates, Tallahassee, for Appellant

Venice HMA, LLC d/b/a Venice Regional Medical Center.

Raoul G. Cantero III and David P. Draigh of White & Case LLP, Miami; and Stephen A. Ecenia and J. Stephen Menton of Rutledge Ecenia, P.A., Tallahassee, for Appellants Sarasota Doctors Hospital, Inc. and Englewood Community Hospital, Inc.

Raymond T. Elligett, Jr. and Amy S. Farrior of Buell & Elligett, P.A., Tampa; Stephen E. DeMarsh, County Attorney, Sarasota; and Frederick J. Elbrecht, Deputy County Attorney, Sarasota, for Appellee Sarasota County.

David A. Wallace, Carol Ann Kalish, and Jennifer L. Grosso of Williams Parker Harrison Dietz & Getzen, Sarasota, for Appellee Sarasota County Public Hospital District.

LaROSE, Judge.

In these consolidated appeals, Sarasota Doctors Hospital, Inc., Englewood Community Hospital, Inc., and Venice HMA, LLC d/b/a Venice Regional Medical Center (collectively, "the Private Hospitals") challenge the final summary judgment entered in favor of Sarasota County and Sarasota County Public Hospital District (collectively, "the County"). The Private Hospitals sought entitlement to reimbursement under a special law of the legislature for providing medical care to indigent Sarasota County residents. The trial court correctly ruled that the portion of the special law requiring the County to make such reimbursement granted an unconstitutional privilege to private corporations. Indeed, the reimbursement would force local taxpayers to fund the Private Hospitals' charity care, a benefit not enjoyed by similarly situated private hospitals in Florida. Consequently, we affirm.

- 2 -

We have jurisdiction over these appeals.  See Fla. R. App. P. 9.030(b)(1)(A).  We review, de novo, the determination of a statute's constitutionality as well as the interpretation of a constitutional provision.  See Shands Teaching Hosp. & Clinics, Inc. v. Mercury Ins. Co., 97 So. 3d 204, 209 (Fla. 2012).

## Background

A general law is one "that operates universally throughout the state, uniformly upon subjects as they may exist throughout the state, or uniformly within a permissible classification."  Dep't of Bus. Regulation v. Classic Mile, Inc., 541 So. 2d 1155, 1157 (Fla. 1989).  In contrast, "a special law is one relating to, or designed to operate upon, particular persons or things . . . ."  Id. (quoting State ex rel. Landis v. Harris, 163 So. 237, 240 (Fla. 1934)).

For at least 130 years, Florida has shown solicitude toward indigent residents needing health care.  The 1885 Florida Constitution, for example, anticipated that all counties would provide hospital and medical care to the indigent: "The respective counties of the State shall provide in the manner prescribed by law for those of the inhabitants that, by reason of age, infirmity or misfortune, may have claims upon the aid and sympathy of society."  Fla. Const. of 1885, art. XIII, § 3.  In 1936, section 3 was amended to add a provision authorizing statewide relief and old age benefits:

> The respective counties of the State shall provide in the manner prescribed by law for those of the inhabitants who, by reason of age, infirmity or misfortune, may have claims upon the aid and sympathy of society; provided, however, the Legislature may by general law provide for a uniform Statewide system for such benefits, and appropriate money therefor . . . ."

Fla. Const. of 1885, art. XIII, § 3 (1936) (emphasis added).

- 3 -

Even before this amendment, however, the legislature expressed concern with the health-care needs of the indigent. For example, in 1935, the legislature authorized boards of county commissioners in all counties with populations between 6418 and 6500 to levy and spend up to one mill of tax revenue annually to create an indigent aid fund. Ch. 17169, Laws of Fla. (1935), repealed by ch. 61-1338, at 794 Laws of Fla. (1961). That same year, it passed a law authorizing counties with populations between 2750 and 2800 to levy up to three mills in property taxes to pay indigent citizens' "hospital bills, medical bills, doctors bills and nurses bills." Ch. 17168, Laws of Fla. (1935).

In addition to these general laws of local application, the legislature enacted special laws authorizing individual counties to provide health care to the indigent. In 1959, for example, the legislature authorized Duval County to renovate, construct, improve, repair, expand, extend, equip, and furnish hospital units and indigent relief departments and appropriated $558,000 per year through 1960 for that purpose. Ch. 59-1240, §§ 1-2, at 1238, Laws of Fla. Earlier, in 1951, the legislature authorized the Hillsborough County Board of County Commissioners to contract with South Florida Baptist Hospital for hospital and medical services to the indigent. Ch. 27612, Laws of Fla. (1951).

Pertinent to us, here, by special law in 1949, the legislature established the Sarasota County Public Hospital District, one of thirty-four special hospital districts. The special law granted the hospital district its own taxing authority separate from

Sarasota County.  See ch. 26468, Laws of Fla. (1949).  Sarasota County voters

approved the special act in a 1950 referendum.[1]

Almost a decade later, in 1959, the legislature amended the special law.

The legislature added an indigent care provision requiring Sarasota County to

reimburse the hospital district for medical services provided to indigent patients at

hospital district facilities.  See ch. 59-1839, § 8(i), at 3884-85, Laws of Fla.  Significantly,

the indigent care provision also required reimbursement to any other hospital in

Sarasota County providing indigent care.  See id.[2]

The indigent care provision was not submitted for voter approval.  Our

record does not contain documentation of public notice; presumably, such notice was

published pursuant to article III, section 20 of the 1885 Constitution as an alternative to

a referendum.  The parties do not claim otherwise.

---

[1]The 1885 Florida Constitution, article III, section 20, prohibited the legislature from passing special or local laws in certain enumerated cases that did not include grants of privileges to private corporations now prohibited by article III, section 11 of the 1968 Florida Constitution.  Article III, section 21 of the 1885 Constitution provided that, in cases not excepted by section 20, the legislature could pass special or local laws providing for or altering municipal government powers only after publishing notice, where the affected matter was situated, at least thirty days before introduction into the legislature, or including in the law a provision that it shall not become effective until ratified by local referendum.

[2]The provision provided, in pertinent part:

> The said board of county commissioners shall in like manner reimburse any other hospital in Sarasota County, Florida, approved by the state board of health, for hospital services rendered to medically indigent persons as herein defined, upon like certification by such hospital and at such rates as shall not exceed those prescribed for such patients by hospitals owned and operated by said Sarasota county public hospital board.

See ch. 59-1839, § 8(i), at 3884-85.

The 1968 Florida Constitution eliminated the 1885 Constitution's indigent care mandate. See art. XII, § 10, Fla. Const. (1968). Florida voters relegated article XII, section 3 of the 1885 constitution to statutory status, subject to legislative action. See id.[3] The legislature later repealed what was by then but a precatory indigent-care statute encouraging medical care for the needy. See § 11.2422, Fla. Stat. (1985).

It is important to note that counties, by general law, are not required to provide any level of indigent medical care; hospitals, on the other hand, must do so. Florida requires all hospitals with emergency departments to provide emergency care when "[a]ny person requests emergency services and care," regardless of ability to pay. § 395.1041(1), (3)(a)(1), (3)(f), Fla. Stat. (2012). See also § 401.45(1)(b), Fla. Stat. (2012); ch. 73-126, § 26, at 206, Laws of Fla.

Similarly, the federal Emergency Medical Treatment and Active Labor Act (EMTALA) requires every hospital with an emergency department, as a condition for participating in and receiving federal funds from Medicare or Medicaid, to provide to all individuals seeking emergency room examination or treatment "an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition" exists. 42 U.S.C. §§ 1395cc(a)(1)(I)(i), 1395dd(a) (2012).[4] If a patient presents with an emergency medical

---

[3]Article XII, section 10, Florida Constitution (1968), provides: "Preservation of existing government.—All provisions of Articles I through IV, VII and IX through XX of the Constitution of 1885, as amended, not embraced herein which are not inconsistent with this revision shall become statutes subject to modification or repeal as are other statutes."

[4]With perhaps the exception of the Veterans Health Administration, federal involvement in the provision of health care seems to have been limited until enactment

- 6 -

condition, the hospital must stabilize the patient before transfer to another facility.  42 U.S.C. § 1395dd(c).  EMTALA forbids hospitals from considering the patient's ability to pay.  See id. § 1395dd(h).  To our understanding, therefore, the Private Hospitals are statutorily bound, under federal and state law, to provide some level of emergency care to indigent patients.

Against this backdrop, we note that, in 2003, the legislature repealed the 1959 special law.  See ch. 03-359, § 2, at 316, Laws of Fla.  It enacted a 2003 special law for "the codification of all special acts relating to [the] Sarasota County Public Hospital District" to provide "a single, comprehensive special act charter for the District including all current legislative authority granted to the District by its several legislative enactments."  See id. § 1.  The 1959 indigent care provision, with only minor nonsubstantive changes, remained a part of this 2003 comprehensive legislation. Compare 1959 Laws of Fla. § 8(i), 3884-85 with ch. 03-359, § 8(9), at 321, Laws of Fla. Notice of the 2003 special law was published in compliance with article III, section 10 of the 1968 Constitution.[5]  See Fla. H.R. Comm. on Local Gov't & Veterans Affairs HB 1113 (2003) Staff Analysis 5 (Mar. 7, 2003).

---

of the Medicare and Medicaid programs in 1965.  See Tracing the History of CMS Programs: From President Theodore Roosevelt to President George W. Bush, Ctrs. for Medicare & Medicaid Servs.,<https://www.cms.gov/About-CMS/Agency-Information/History/Downloads PresidentCMSMilestones.pdf> (last visited June 30, 2015).

[5]Florida Constitution article III, section 10 provides as follows:
> No special law shall be passed unless notice of
> intention to seek enactment thereof has been
> published in the manner provided by general law.
> Such notice shall not be necessary when the law,
> except the provision for referendum, is conditioned to

For years, the Private Hospitals never sought reimbursement under the indigent care provision of the 2003 special law, section 8(9). The County suggests that no District hospital ever received reimbursement under the indigent care provision. Apparently, however, the Private Hospitals requested and received some reimbursement from the County under ordinance 72-79, enacted a year after Sarasota County became a charter county.[6] See Sarasota Cty. Charter (1971). Unlike the indigent care provision of the 2003 special law, ordinance 72-79 authorized, but did not require, the Board of County Commissioners to furnish hospital care to Sarasota County's medically indigent residents. See Sarasota Cty., Fla., Ordinance 72-79, § 2 (1972). The ordinance remains in effect. Later, ordinance 77-96 authorized the Board of County Commissioners to approve expenditure of funds for emergency medical care to persons qualified for public welfare. See § 102-2, Sarasota Cty. Code (codification of Sarasota County Ordinance No. 77-96).

Beginning in November 2008, and monthly thereafter, the Private Hospitals submitted to the County a list of costs associated with providing hospital care to the indigent in Sarasota County. The Private Hospitals requested reimbursement for these costs pursuant to section 8(9) of the 2003 special law. At the time of the

-------

become effective only upon approval by vote of the electors of the area affected.

[6]Florida electors granted to local voters the power to adopt charters to govern their counties in 1968. See art. VIII, § 1, Fla. Const. "Charters are formal written documents that confer powers, duties, or privileges on the county. They resemble state or federal constitutions and they must be approved, along with any amendments, by the voters of a county." Charter County Information, Fla. Ass'n of Counties, http://www.fl-counties.com/about-floridas-counties/charter-county-information (last visited June 26, 2015).

summary judgment hearing in the trial court, these reimbursement requests totaled about $200 million. The County refused to pay.

Procedural Posture

In 2011, the Private Hospitals sued for declaratory and injunctive relief. They sought a declaration establishing their right to reimbursement from the County for providing indigent care under the indigent care provision of the 2003 special law. The County counterclaimed, alleging that the indigent care provision, to the extent it mandated reimbursement to the Private Hospitals, violated the Florida Constitution. The County maintained that such reimbursement would provide an unconstitutional privilege to private corporations. See art. III, § 11(a)(12), Fla. Const.[7] Basically, the County argued that the Private Hospitals wanted to shift their operating costs to Sarasota County taxpayers. If the indigent care provision of the 2003 special law is constitutional, so the argument goes, the County may be forced to levy additional ad valorem taxes for the support of private actors.

Both sides filed summary judgment motions. To cure the perceived constitutional infirmity, the County, in its motion, asked the trial court to sever section 8(9) from the remainder of the 2003 special law. The trial court consolidated the two cases and issued a single order granting summary judgment in favor of the County. We have consolidated the separately filed appeals of that order.

_____

[7]Art. III, § 11 Prohibited special laws.—
(a) There shall be no special law or general law of local application pertaining to:
    . . . .
(12) private incorporation or grant of privilege to a private corporation . . . .

- 9 -

The trial court's summary judgment order acknowledged that the 2003 special law authorized the County and the District "to tax, budget, and distribute tax revenue for the purpose of providing health care to medically indigent citizens" and "[mandates] . . . reimbursement for medically indigent citizens of Sarasota County to hospitals not operated by the Sarasota County Hospital District."[8]  The trial court, however, found this latter portion of the indigent care provision unconstitutional.  The trial court reasoned that reimbursement to the Private Hospitals would grant them an unconstitutional privilege relative to other privately-owned hospitals.  Recognizing that the indigent care provision was but a small part of the comprehensive 2003 special law,

---

[8]The parties have referred us to special laws establishing other hospital districts throughout Florida.  Seemingly, the 2003 special law is the only legislation compelling payment to nondistrict hospitals; other districts are authorized but not compelled to make payment to private hospitals.  For example, Volusia County has three hospital districts.  The Southeast Volusia Hospital District's board of commissioners "is authorized to enter into a contract . . . with any hospital, clinic, or nursing home, public or private . . . [to provide] such facilities or services to the poor and indigent and to pay for the same" out of district funds.  Ch. 03-310, § 3, at 50, Laws of Fla.  Similarly, the West Volusia Hospital Authority board of commissioners "shall provide for the health or mental health care of indigents . . . in such manner as the board selects, including the purchase of institutional services from any private or publicly owned medical facility."  Ch. 04-421, § 3, at 153-54, Laws of Fla.  In contrast, the Halifax Hospital Medical Center special tax district pays for medical services to indigent persons "only if such services are provided at facilities in which the district . . . holds an ownership interest."  Ch. 03-374, § 3, at 465, Laws of Fla.  The Health Care District of Palm Beach County has authority to provide for reimbursement to hospitals; it is restricted from reimbursing hospitals for their bad debts arising from patients noneligible for district reimbursement, but "shall continue to reimburse such health care providers for the medical care of medically needy patients, to the extent of the district's limited financial resources, taking into account funds available from other sources, including other governmental funding sources."  Ch. 00-489, § 2, at 727, Laws of Fla.  The parties have not directed us to any special law or local ordinance related to the provision of indigent care in Manatee County or Charlotte County, two counties adjacent to Sarasota County.

the trial court severed section 8(9) from the remainder of the special act. It expressly declined to address the County's other arguments opposing the Private Hospitals' claims for reimbursement.[9] We, too, will not address those arguments.

Issues for Resolution

As framed by the trial court's order, the critical issue before us is whether the indigent care provision of the 2003 special law requiring reimbursement to all hospitals in Sarasota County for providing medical care to indigent patients violates article II, section 11(a)(12) of the Florida Constitution. If so, we must determine whether that provision can be severed from the law as a whole.

Constitutionality of the Indigent Care Provision

Indisputably, the 2003 special law applies only in Sarasota County. Thus, it falls within the ambit of article X, section 12(g) of the Florida Constitution.[10] See Martin Mem'l Med. Ctr., Inc. v. Tenet HealthSystem Hosps., Inc., 875 So. 2d 797, 802 (Fla. 1st DCA 2004) (holding law that applied to only hospitals located in five counties was a special or local law).

The Private Hospitals are for-profit entities. "Privilege," under article II, section 11(a)(12), is a broad term that includes more than just financial benefits. Lawnwood Med. Ctr., Inc. v. Seeger, 990 So. 2d 503, 513-14 (Fla. 2008). We can dispose quickly of the Private Hospitals' argument that the indigent care provision, at

---

[9]The County argued that the 2003 special law violated Sarasota County's charter and was void for vagueness.

[10]Art. X, § 12. Rules of construction.—Unless qualified in the text of the following rules of construction shall apply to this constitution.

   . . . .

(g) "Special law" means a special or local law.

- 11 -

most, gives a privilege to the medically indigent patients whose care would be reimbursed. However, under various statutes, the Private Hospitals must treat the indigent regardless of ability to pay. Further, any reimbursement the Private Hospitals seek would go directly to them, not to any patient. The sought-after reimbursement inures directly to the benefit of the Private Hospitals.

More to the point, however, whether the reimbursement is a forbidden "privilege" depends on whether the indigent care provision "grants [the Private Hospitals] a 'right' and place[s] [them] in an advantageous position, one that [they] did not possess before the law was enacted." Id. at 517. Before addition of the indigent care provision in the 1959 special law, no non-District hospital was entitled to reimbursement for providing medical care to the indigent. See ch. 59-1839, § 5, at 3884 (amending section 8 to provide for County reimbursement of certain other hospitals in Sarasota County). Indeed, in light of the other special laws establishing hospital districts, reimbursing the Private Hospitals for providing indigent care medical services to the indigent would place them in a unique position. As we mentioned before, it does not appear that any other special law mandates such reimbursement. The Private Hospitals, if they prevail, certainly would have an advantageous position relative to other private hospitals in Florida, indeed, even as to those that may exist in adjacent counties.

Nonetheless, the Private Hospitals entreat us to accept their argument that the indigent care provision is constitutional because District hospitals, too, can claim reimbursement. According to the Private Hospitals, the indigent care provision merely places them on equal footing with Sarasota County's public hospitals. We are

- 12 -

not persuaded.  As the County asserts, "[t]he correct analysis is whether the 2003 special act gives the Private Hospitals in Sarasota County a privilege that private hospitals elsewhere in the state do not share."

Under the Private Hospitals' analysis, the County warns of strange results. The County posits that the legislature could enact a special law requiring a local government to pay the salaries of public school and private school teachers.  Or, it envisions a situation where the legislature compels a local government to pay for security for a corporation because the local government pays the sheriff for public safety.  Though seemingly extreme, these examples highlight the County's key point that benefiting the Private Hospitals through the special law would allow them to enjoy the mandated privilege of reducing their operating cost shared by no other private hospital in the state by demanding taxpayer support in Sarasota County.

The Private Hospitals also contend that they perform a public good by providing medical care to the indigent.  This argument holds no water.  We note that state and federal law compels them to provide some level of emergency care.  It seems clear that the Private Hospitals, at least in part, provide this care to reap the financial benefits of the federal Medicare and Medicaid programs.  The claimed altruism may not be all that it appears to be.

Nevertheless, the Private Hospitals cite us to numerous cases to support their position.  See Linscott v. Orange Cnty. Indus. Dev. Auth., 443 So. 2d 97, 101 (Fla. 1983) (affirming validation of issuance of industrial development revenue bonds to construct multistate insurance company regional headquarters); State v. Volusia Cty. Indus. Dev. Auth., 400 So. 2d 1222, 1224 (Fla. 1981) (upholding constitutionality and

stating that health care facilities "serve a paramount public purpose and provide only incidental benefits to a private corporation"); State v. Leon Cty., 400 So. 2d 949, 951 (Fla. 1981) (stating that "health care industries are vital to the economy of the state and the welfare of the people" and serve "a paramount public purpose"; upholding constitutionality of validation of revenue bonds to finance acquisition of nursing home facility to be sold to private operator); State v. Housing Fin. Auth., 376 So. 2d 1158, 1160 (Fla. 1979) ("[I]t is immaterial that the primary beneficiary of a project be a private party, if the public interest, even though indirect, is present and sufficiently strong"; affirming validation of issuance of revenue bonds to purchase mortgages of private residences to alleviate affordable housing shortage); Wald v. Sarasota Cty. Health Facilities Auth., 360 So. 2d 763, 770 (Fla. 1978) (stating that "[o]bviously, the provision of adequate health care facilities fosters the health, safety and welfare of the citizens of this State and, therefore, serves a paramount public purpose"; upholding constitutionality of validation of revenue bonds for construction costs to improve private hospital).

Their authority, however, involves public financing of capital projects under article VII, section 10 of the Florida Constitution. Because those cases involve matters of pledging the full faith and credit of state or local government, they are inapposite to our analysis of "privilege" under article III, section 11(12).

As set forth above, article III, section 11(12) prohibits a special law that grants a private corporation a privilege placing it in an advantageous position that it did not possess before enactment of the law. That is the case here. Consequently, to the extent that the third paragraph of section 8(9) of the 2003 special law mandates that the

County expend county taxpayer dollars to pay claims submitted by the Private

Hospitals, it grants an unconstitutional privilege to those hospitals.

Severability

The constitutionally offensive provision of section 8(9) of the 2003 special

law is severable from the remainder of the legislation because (1) the offensive

provision can be separated from the valid provisions that remain, (2) the legislative

purpose of the valid provisions can be accomplished without the invalid provision,

(3) the provision is not so substantively inseparable that the legislature would not have

passed the 2003 special act without it—in fact, the legislature did pass the special law

without it in 1949, and (4) a complete act remains after severance. See Cramp v. Bd. of

Pub. Instruction, 137 So. 2d 828, 830 (Fla. 1962). We also note that the legislature

contemplated severance when it included language in the 2003 special law providing

that "[i]f any section, paragraph, sentence, clause, phrase or other part of [the special]

act shall be declared unconstitutional . . . , such declaration shall not affect the

remainder of [the special] act or the applicability thereof in any other case." Ch. 03-359,

§ 5, at 336. The third paragraph of section 8(9) is the only paragraph of section 8, and

the only paragraph in the entire 2003 special law, relating to private hospitals. The

remainder relates to only public hospitals operated by the County. We see no error by

the trial court in severing this provision from the remainder of the law.

Conclusion

That portion of the indigent care provision mandating reimbursement to

the Private Hospitals for providing medical care to indigent residents of Sarasota County

is unconstitutional as a "privilege" forbidden by article III, section 11(12), of the Florida

- 15 -

Constitution.  Severance of the unconstitutional provision by the trial court was clearly appropriate.

Affirmed.


ALTENBERND and CRENSHAW, JJ., Concur.