# Supreme Court of Florida

_____

No. SC15-2289
_____

**VENICE HMA, LLC D/B/A VENICE REGIONAL MEDICAL CENTER,**
Appellant,

vs.

**SARASOTA COUNTY, et al.,**
Appellee.

_____

No. SC15-2292
_____

**SARASOTA DOCTORS HOSPITAL, INC., et al.,**
Appellant,

vs.

**SARASOTA COUNTY, et al.,**
Appellee.

[July 6, 2017]

POLSTON, J.

These consolidated cases are before the Court on appeal from the decision of

the Second District Court of Appeal in Venice HMA, LLC v. Sarasota County, 198

So. 3d 23 (Fla. 2d DCA 2015), which held that the indigent care provision of the

special law applicable only to Sarasota County constitutes an unconstitutional privilege because it provides for reimbursement to the public and private hospitals only in Sarasota County rather than in the entire State of Florida.[1]  However, because a special law by definition operates only in a defined subdivision of the State, we reverse the Second District's decision.  The indigent care provision does not grant a privilege to a private corporation in violation of article III, section 11(a)(12) of the Florida Constitution because it applies equally to all hospitals in Sarasota County, whether public or private.

### BACKGROUND

The Second District described the background of the statutory provision at issue and the factual history of these cases as follows:

> [B]y special law in 1949, the legislature established the Sarasota County Public Hospital District, one of thirty-four special hospital districts.  The special law granted the hospital district its own taxing authority separate from Sarasota County.  See ch. 26468, Laws of Fla. (1949).  Sarasota County voters approved the special act in a 1950 referendum.
> Almost a decade later, in 1959, the legislature amended the special law.  The legislature added an indigent care provision requiring Sarasota County to reimburse the hospital district for medical services provided to indigent patients at hospital district facilities.  See ch. 59–1839, § 8(i), at 3884–85, Laws of Fla.  Significantly, the indigent care provision also required reimbursement to any other hospital in Sarasota County providing indigent care.  See id.

---

1. We have jurisdiction.  See art. V, § 3(b)(1), Fla. Const.

The indigent care provision was not submitted for voter approval. Our record does not contain documentation of public notice; presumably, such notice was published pursuant to article III, section 20 of the 1885 Constitution as an alternative to a referendum. The parties do not claim otherwise.

. . . .

[I]n 2003, the legislature repealed the 1959 special law. See ch. 03–359, § 2, at 316, Laws of Fla. It enacted a 2003 special law for "the codification of all special acts relating to [the] Sarasota County Public Hospital District" to provide "a single, comprehensive special act charter for the District including all current legislative authority granted to the District by its several legislative enactments." See id. § 1. The 1959 indigent care provision, with only minor nonsubstantive changes, remained a part of this 2003 comprehensive legislation. Compare 1959 Laws of Fla. § 8(i), 3884–85 with ch. 03–359, § 8(9), at 321, Laws of Fla. Notice of the 2003 special law was published in compliance with article III, section 10 of the 1968 Constitution. See Fla. H.R. Comm. on Local Gov't & Veterans Affairs HB 1113 (2003) Staff Analysis 5 (Mar. 7, 2003).

. . . .

Beginning in November 2008, and monthly thereafter, the Private Hospitals[2] submitted to the County a list of costs associated with providing hospital care to the indigent in Sarasota County. The Private Hospitals requested reimbursement for these costs pursuant to section 8(9) of the 2003 special law[.] The County refused to pay.

Venice HMA, 198 So. 3d at 25-28 (footnotes omitted).

In 2011, the Private Hospitals "sought a declaration establishing their right to reimbursement from the County for providing indigent care under the indigent care provision of the 2003 special law." Id. at 28. However, "[t]he County

_____

2. Sarasota Doctors Hospital, Inc., Englewood Community Hospital, Inc., and Venice HMA, LLC d/b/a Venice Regional Medical Center are collectively referred to as "the Private Hospitals." See Venice HMA, 198 So. 3d at 24.

maintained that such reimbursement would provide an unconstitutional privilege to private corporations" in violation of article III, section 11(a)(12). Id. The trial court entered summary judgment agreeing with the County. Id. at 29.

On appeal, the Second District affirmed, stating that "[t]he correct analysis is whether the 2003 special act gives the Private Hospitals in Sarasota County a privilege that private hospitals elsewhere in the state do not share." Id. at 30 (quoting and agreeing with the County). The Second District explained that "[b]efore addition of the indigent care provision in the 1959 special law, no non-District hospital was entitled to reimbursement for providing medical care to the indigent" and that "[t]he Private Hospitals, if they prevail, certainly would have an advantageous position relative to other private hospitals in Florida, indeed, even as to those that may exist in adjacent counties." Id. at 29-30.[3]

## ANALYSIS

"The constitutionality of a statute is a pure question of law subject to de novo review." City of Fort Lauderdale v. Dhar, 185 So. 3d 1232, 1234 (Fla. 2016).

---

3. The brief filed in this Court by Sarasota Doctor's Hospital, Inc. and Englewood Community Hospital, Inc. states that there are 33 special hospital districts created by special law in Florida, and "[f]ully one-third of [those] authorize reimbursement for the delivery of medical care to indigent patients by nonpublic providers." Initial Brief at 12-13 (citing special laws involving the Health Care District of Palm Beach County, the West Volusia Hospital Authority, the Lakeshore Hospital Authority in Columbia County, the North Broward Hospital District, and the Citrus County Hospital District, among others).

"[A] determination that a statute is facially unconstitutional means that no set of circumstances exists under which the statute would be valid." Pub. Defender, Eleventh Jud. Cir. v. State, 115 So. 3d 261, 280 (Fla. 2013).

Article X, section 12(g) of the Florida Constitution explains that " '[s]pecial law' means a special or local law." And this Court has described special and local laws as follows:

> [A] special law is one relating to, or designed to operate upon, particular persons or things, or one that purports to operate upon classified persons or things when classification is not permissible or the classification adopted is illegal; a local law is one relating to, or designed to operate only in, a specifically indicated part of the state, or one that purports to operate within classified territory when classification is not permissible or the classification adopted is illegal.

Florida Dep't of Bus. & Prof'l Reg. v. Gulfstream Park Racing Ass'n, 967 So. 2d 802, 807 (Fla. 2007) (quoting State ex rel. Landis v. Harris, 163 So. 237, 240 (Fla. 1934)) (emphasis added). In contrast, "[a] general law operates universally throughout the state, or uniformly upon subjects as they may exist throughout the state, or uniformly within permissible classifications by population of counties or otherwise, or is a law relating to a state function or instrumentality." Id. No one disputes that the law at issue here is a local law (which is included in the constitutional definition of special law) in that it operates only in Sarasota County.

Article III, section 10 of the Florida Constitution provides that "[n]o special law shall be passed unless notice of intention to seek enactment thereof has been

published in the manner provided by general law;" however, such notice is unnecessary if the special law is "conditioned to become effective only upon approval by vote of the electors of the area affected." As the Second District explained, no one is claiming that the provision at issue in this case was not properly noticed as a special law. See Venice HMA, 198 So. 3d at 26.

Furthermore, article III, section 11 provides a list of subjects that may not be addressed by special law. Specifically, according to article III, section 11(a) (emphasis added), "[t]here shall be no special law or general law of local application pertaining to:"

> (1) election, jurisdiction or duties of officers, except officers of municipalities, chartered counties, special districts or local governmental agencies;
> (2) assessment or collection of taxes for state or county purposes, including extension of time therefor, relief of tax officers from due performance of their duties, and relief of their sureties from liability;
> (3) rules of evidence in any court;
> (4) punishment for crime;
> (5) petit juries, including compensation of jurors, except establishment of jury commissions;
> (6) change of civil or criminal venue;
> (7) conditions precedent to bringing any civil or criminal proceedings, or limitations of time therefor;
> (8) refund of money legally paid or remission of fines, penalties or forfeitures;
> (9) creation, enforcement, extension or impairment of liens based on private contracts, or fixing of interest rates on private contracts;
> (10) disposal of public property, including any interest therein, for private purposes;
> (11) vacation of roads;
> (12) private incorporation or grant of privilege to a private corporation;

(13) effectuation of invalid deeds, wills or other instruments, or change in the law of descent;

(14) change of name of any person;

(15) divorce;

(16) legitimation or adoption of persons;

(17) relief of minors from legal disabilities;

(18) transfer of any property interest of persons under legal disabilities or of estates of decedents;

(19) hunting or fresh water fishing;

(20) regulation of occupations which are regulated by a state agency; or

(21) any subject when prohibited by general law passed by a three-fifths vote of the membership of each house.  Such law may be amended or repealed by like vote.

The Private Hospitals argue that the indigent care provision of the special law at issue here does not grant a privilege to a private corporation in violation of article III, section 11(a)(12) because it applies equally to all hospitals in Sarasota County, whether public or private.  We agree.

In Lawnwood Medical Center, Inc. v. Seeger, 990 So. 2d 503, 517-18 (Fla. 2008), this Court held that a special law affecting two private hospitals in St. Lucie County, which were both owned by the same private corporation, provided an unconstitutional privilege because it granted the corporation "almost absolute power in running the affairs of the hospital, essentially without meaningful regard for the recommendations or actions of the medical staff."  In its analysis, this Court considered whether the "privilege" prohibited by section 11(a)(12) is "economic favoritism over other entities similarly situated" or whether " 'privilege' encompasses more than a financial benefit."  Id. at 510.  This Court "conclude[d]

that a broad reading of the term 'privilege' as used in article III, section 11(a)(12),—one not limiting the term to any particular type of benefit or advantage—is required." Id. at 512.

In determining the plain meaning of the constitutional text "grant of privilege to a private corporation," this Court in Lawnwood considered dictionary definitions of "privilege" from the time when the text was adopted, noting that "[t]he definitions have not substantially changed from those that existed at the time of the 1968 constitutional revision." Id. at 511 n.10; see Myers v. Hawkins, 362 So. 2d 926, 930 (Fla. 1978) ("[W]e initially consult widely circulated dictionaries, to see if there exists some plain, obvious, and ordinary meaning for the words or phrases approved for placement in the Constitution."). Specifically, we referenced Black's Law Dictionary, which defined "privilege" as "a particular and peculiar benefit or advantage enjoyed by a person, company, or class, beyond the common advantage of other citizens." Lawnwood, 990 So. 2d at 511 (quoting Black's Law Dictionary 1359 (4th ed. 1968)). We also considered Webster's Seventh New Collegiate Dictionary, which defined "privilege" as "a right or immunity granted as a peculiar benefit, advantage, or favor." Id. at 511 (quoting Webster's Seventh New Collegiate Dictionary 677 (7th ed. 1967)). Further, this Court in Lawnwood explained that "definitions from other state supreme courts construing similar provisions in their constitutions parallel the dictionary definitions as well as the

common sense understanding of a 'privilege' as connoting a special benefit, advantage, or right enjoyed by a person or corporation." Id. at 512. In other words, in common parlance, a privilege is having something that others do not have.

Here, the indigent care provision provides for reimbursement to all hospitals in Sarasota County for expenses related to care for indigent patients:

> To certify to the Board of County Commissioners of Sarasota County, on or before the 15th day of each month commencing with the month of November 1959, a list of all the medically indigent persons who have been hospitalized in any of the hospitals which are operated by the Hospital Board during the preceding month, together with the itemized charges for the hospital services and care for each of said medically indigent persons which have been rendered in such preceding month by the said hospital. The Board of County Commissioners of Sarasota County shall, within 45 days after the receipt of such certified list of medically indigent patients with the hospital charges, make remittance to the treasurer of the Hospital Board of the sum total of the amount shown on the certified list to be the amount owing to the Hospital Board for the hospital services and care rendered to the medically indigent persons during the month embraced in said certification.
> . . . .
> The said Board of County Commissioners shall in like manner reimburse any other hospital in Sarasota County, approved by the State Board of Health, for hospital services rendered to medically indigent persons as herein defined, upon like certification by such hospital and at such rates as shall not exceed those prescribed for such patients by hospitals owned and operated by said Hospital Board.

Ch. 2003-359, § 3, at 321, Laws of Fla. (emphasis added). Therefore, because the provision provides for reimbursement to all hospitals in Sarasota County (private and public), it is not providing a "particular and peculiar benefit or advantage" to a

private corporation that is "beyond the common advantage of other citizens." Lawnwood, 990 So. 2d at 511 (quoting Black's Law Dictionary 1359 (4th ed. 1968)). Accordingly, the indigent care provision does not violate the plain meaning of article III, section 11(a)(12) of the Florida Constitution.

Importantly, we reach this holding based upon the plain meaning of the text in the Florida Constitution, including the plain meaning of the term "privilege." And we reject the dissent's accusation that our decision adds words to the text of our state's foundational document. We believe that the language "grant of privilege to a private corporation" contained in section 11(a)(12) reasonably means providing a benefit to a private corporation that others do not receive. This special law neither singles out private corporations as a class or any particular private corporations for any privilege.

The County argues, and the Second District agreed, that "[t]he correct analysis is whether the 2003 special act gives the Private Hospitals in Sarasota County a privilege that private hospitals elsewhere in the state do not share." Venice HMA, 198 So. 3d at 30 (quoting and agreeing with the County). However, this argument conflates the definition of "privilege" with the very nature of special laws, which by definition only operate in a defined subdivision of the State. See article X, § 12(g), Fla. Const. (providing that " '[s]pecial law' means a special or local law"); Gulfstream Park Racing Ass'n, 967 So. 2d at 807 (explaining that "a

- 10 -

local law is one relating to, or designed to operate only in, a specifically indicated part of the state" (quoting State ex rel. Landis, 163 So. at 240)); see also State v. Leavins, 599 So. 2d 1326, 1331 n.10 (Fla. 1st DCA 1992). Because the special law only applies to Sarasota County, we must limit our comparisons to Sarasota County.

The dissent observes that the special law in Lawnwood—the St. Lucie County Hospital Governance Law—"was a local law that applied only to hospitals in St. Lucie County." Dissenting op. at 15. Because this Court in Lawnwood invalidated such a local law (by ruling that it "impermissibly provide[d] a privilege to a private corporation"), the dissent contends that "Lawnwood made clear that the appropriate analysis is between the hospitals affected by the local law and other similarly situated hospitals in the State of Florida." Id. Based on this understanding of Lawnwood, the dissent asserts that our "resolution of this case is . . . directly and irreconcilably in conflict with Lawnwood on the facts." Id. at 18.

But our opinion in Lawnwood repeatedly makes the point that the special law affected only privately owned hospitals in St. Lucie County. And that fact was central to our reasoning in support of the conclusion that the special law at issue in Lawnwood impermissibly granted a corporate privilege. In reciting the facts in Lawnwood, we observed that "[i]t is uncontroverted that the special law affected only the two private hospitals in St. Lucie County, which are both owned by the

- 11 -

same private parent corporation." 990 So. 2d at 508. In our analysis, we stated that an express provision of the special law "makes clear that the hospitals affected by the law are only those whose licenses are held by corporations," and we observed that "[i]t is apparent from the express language in the [special law] that the law was intended to affect only those privately operated hospitals located in St. Lucie County." Id. at 510. From this we concluded that the special law "is unquestionably a special law affecting a private corporation." Id. We reiterated that the special act "was passed as a special law and specifically enacted to affect only private, corporately owned hospitals in St. Lucie County." Id.

Contrary to the dissent's apparent interpretation, all of this in the Lawnwood opinion cannot reasonably be understood as designed to make the obvious point that hospitals outside St. Lucie County were not affected by the St. Lucie County Hospital Governance Act. Rather, the point the Lawnwood opinion turned on was that only hospitals owned by private corporations were affected—that is, granted a privilege—by the special law. And that is what distinguishes Lawnwood from the present case. In other words, the special law was invalidated in Lawnwood because it affected only private hospitals, whereas the special law is permissible here because it affects both public and private hospitals.

Additionally, although not addressed in the Second District's decision, the County and the District contend that the indigent care provision violates the

County's home-rule powers because it was not approved by the voters in Sarasota County. The County and District cite article VIII, section 1(g) of the Florida Constitution in support of their argument. But, while article VIII, section 1(g) of the 1968 Florida Constitution discusses charter counties' powers of self-government and mentions "special law approved by vote of the electors," this provision was not in effect when the indigent care provision was enacted in 1959. See art. XII, § 6(a), Fla. Const. ("All laws in effect upon the adoption of this revision, to the extent not inconsistent with it, shall remain in force until they expire by their terms or are repealed."). Moreover, when a statute is "repealed and substantially re-enacted," as this one was in 2003, it is "deemed to have been in operation continuously from the original enactment." McKibben v. Mallory, 293 So. 2d 48, 53 (Fla. 1974). Therefore, we disagree with the County's and District's argument that the indigent care provision unconstitutionally violates the County's home-rule powers.[4]

**CONCLUSION**

Accordingly, because the indigent care provision of the special law applies to all hospitals (public and private) in Sarasota County, it does not grant a privilege to a private corporation in violation of the plain meaning of article III, section

---

4. We also reject without further comment the County's and District's argument that the special law is void for vagueness.

- 13 -

11(a)(12). We reverse the Second District's decision affirming the invalidation and severance of the indigent care provision.

It is so ordered.

LABARGA, C.J., and LEWIS, QUINCE, and CANADY, JJ., concur.
LAWSON, J., dissents with an opinion, in which PARIENTE, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

LAWSON, J., dissenting.

In my view, our decision in <u>Lawnwood Medical Center, Inc. v. Seeger</u>, 990 So. 2d 503 (Fla. 2008), applies the unambiguous language of article III, section 11(a)(12), and article X, section 12(g), of the Florida Constitution and is controlling here. Staying the constitutional course charted by our precedent, I would approve the decision of the Second District Court of Appeal. Therefore, I respectfully dissent.

In <u>Lawnwood</u>, we defined "privilege" in the context of article III, section 11(a)(12)'s prohibition against a "special law"—which pursuant to article X, section 12(g), includes a "local law" of the type at issue here—as "a right, a special benefit [including "a financial benefit"], or an advantage."[5] <u>Lawnwood</u>, 990 So.

---

5. Article X, section 12(g), of the Florida Constitution defines "[s]pecial law" as "a special <u>or local law</u>." (Emphasis added.) The law at issue here is a local law, meaning that it is a special law. <u>Id.</u> Article III, section 11(a)(12), prohibits any "special law" that "pertain[s] to . . . private incorporation or grant of privilege to a private corporation."

2d at 511.  The law at issue in <u>Lawnwood</u> was a local law that applied only to hospitals in St. Lucie County.  <u>Id.</u> at 506 ("The parties do not dispute that the HGL is a special law applicable to private corporations only in St. Lucie County . . . .").  Our Court held the act to be invalid because it "impermissibly provide[d] a privilege to . . . a private corporation" in St. Lucie County not granted to other hospitals in the state.  <u>Id.</u>  After recognizing that the Florida Constitution defines "a special law as 'a special or local law,' " our Court clearly stated: "It is apparent from the express language in the HGL that the law was intended to affect only those privately operated hospitals <u>located in St. Lucie County</u>.  Therefore, the HGL is unquestionably a special law affecting a private corporation."  <u>Id.</u> at 510 (emphasis added).  Thus, <u>Lawnwood</u> made clear that the appropriate analysis is between the hospitals affected by the local law and other similarly situated hospitals in the State of Florida.

I would apply <u>Lawnwood</u> the same way here and thereby stay the constitutional course.  Specifically, the payment of local government funds to private hospital corporations mandated by the special law at issue here is a financial benefit and therefore a privilege as defined by <u>Lawnwood</u>.  Because this financial benefit was conferred by special law, it violates article III, section 11(a)(12).  Mandating these payments to private corporations from local tax dollars may constitute sound public policy that should be implemented on a statewide

- 15 -

basis by general law. But, article III, section 11(a)(12), unambiguously bars the grant of this type of benefit to private corporations by special law.

Instead of applying the straightforward language of the Constitution in this straightforward manner, the majority focuses on the fact that the word "privilege" connotes a benefit not enjoyed by others. In my view, it makes no sense to ask whether the benefit conferred is "enjoyed by others" when that concept is a structural part of the constitutional provision. In other words, granting a benefit by special law means that the benefit is not extended to other similarly situated private corporations in the state. This is especially apparent when considering a non-local special law.

For example, if the special law at issue here had granted this very same financial benefit to one or more private hospital corporations by name, petitioners readily and properly concede that the financial benefit would constitute an unauthorized privilege because other private hospital corporations operating in Florida would be excluded from the same financial benefit. This same straightforward application should apply to local laws because the Constitution uses the exact same language for all special laws. Instead of applying the Constitution as written—to prohibit this local law "pertaining to . . . private incorporation or grant of privilege to a private corporation," article III, section

11(a)(12), Florida Constitution—the majority has effectively rewritten the Constitution to differentiate between local laws and other special laws as follows:

> The legislature shall not enact either: (1) special laws that pertain to private incorporation or grant of privilege to a private corporation or (2) local laws that pertain to private incorporation or grant of privilege to a private corporation <u>where the privilege is not also granted to other similar private and public corporations within the same locality</u>.

My first observation regarding this judicially reworked constitutional language is that it appears to <u>always</u> permit the grant of a privilege by local law because, by definition, "a local law is one relating to, or designed to operate only in, a specially indicated part of the state . . . ." <u>Lawnwood</u>, 990 So. 2d at 509 (quoting <u>Florida Dep't of Bus. & Prof'l Regulation v. Gulfstream Park Racing Ass'n</u>, 967 So. 2d 802, 807 (Fla. 2007). Therefore, a local law directed at hospitals, like the law at issue here and in <u>Lawnwood</u>, by definition necessarily applies to <u>all</u> hospitals in the locality (because that is the very nature of a local law). If the law were drawn more narrowly, to apply to only specified hospitals in the area, it would be a non-local special law.

My second observation is that this rewrite of the Constitution directly contradicts the acknowledgment in <u>Lawnwood</u> that "we are not at liberty to add words to article III, section 11(a)(12), which were not placed there by the drafters of the Florida Constitution." <u>Id.</u> at 512. Ironically, not only is this addition of language to article III, section 11(a)(12), expressly prohibited by <u>Lawnwood</u>, but

- 17 -

the majority's resolution of this case is also directly and irreconcilably in conflict with <u>Lawnwood</u> on the facts.

My third observation about the majority's judicial rewrite of this constitutional provision is that it makes no logical sense to treat local laws differently than non-local special laws because it allows the Legislature to grant the exact same corporate privilege by local law that would clearly be barred by non-local special law. For example, take a county with one public hospital (say, the "Local Hospital") and one private hospital (the "ABC Hospital Corp."). Clearly, the Legislature could not pass a special law requiring millions of local tax dollars to be paid to the Local Hospital and the ABC Hospital Corp. by name, and no other hospital in the state. There is no rational argument that this non-local special law would not violate article III, section 11(a)(12). But, under the majority's interpretation of article III, section 11(a)(12), the Legislature could provide the exact same corporate privilege to the same private hospital by local law. That makes no sense where the language prohibits the grant of this type of privilege by any type of special law. Of course, I could come up with any number of hypotheticals involving counties with no private hospitals or multiple public and private hospitals where a non-local special law granting the privilege would be barred under the majority's interpretation but a local law granting the same corporate privilege would be upheld as constitutional. This odd anomaly of the

- 18 -

majority's interpretation is really just another way of pointing out that the majority's reading of the language barring special law corporate privileges actually allows the Legislature to grant a corporate privilege by local law.

Finally, it seems worth reflecting upon the obvious policy concerns underlying this particular provision of the Florida Constitution, as written. Some relate to all special laws. For example, it seems that granting special benefits to private corporations by any type of special law would be subject to criticism as an improper use of taxpayer money or as unfair in a free market system or as rife with the potential for graft. Again, if it is good public policy to give taxpayer money to a class of private corporations (such as hospital corporations) in the state, then it should be good public policy throughout the state. Otherwise, the special treatment begins to look like legislative largess to particularly connected corporations in that class instead of just good public policy. But, at least the enactment of a non-local special law privilege (to a private corporation) would be consistent with the underlying structure of our representative form of government. That is, if a non-local special law privilege were permitted by the Constitution and the Florida Legislature voted to directly grant a significant financial benefit to a select group of named for-profit private hospitals in the state from general revenue, the citizens of this state would have recourse at the ballot box if they disagreed with the action.

But, with a local law like the one at issue here, legislators from other parts of the state could force the citizens of a single county to bear a significant financial burden flowing to a few private corporations in their county even if their local representatives voted against the measure and even if the electorate never had an opportunity to ratify the action by a local vote, as happened here. That, to me, seems like the most troublesome type of special law privilege because it could be enacted entirely by legislators not accountable to the local citizens on whom they placed the burden of financing the corporate privilege.[6] Unfortunately, the majority has now written the protection against granting a corporate privilege by local law out of our Constitution. Therefore, I dissent.

PARIENTE, J., concurs.

An Appeal from the District Court of Appeal – Statutory or Constitutional Invalidity

    Second District - Case Nos. 2D13-5752 & 2D13-5753

    (Sarasota County)

Geoffrey D. Smith, Timothy B. Elliott, Kara L. Gross, and Susan C. Smith of Smith & Associates, Tallahassee, Florida,

    for Appellant Venice HMA, LLC, d/b/a Venice Regional Medical Center

---

    6. In this case, it is estimated that the citizens of Sarasota County will owe $300 million to the private hospital corporations in their county.

Raoul G. Cantero, David P. Draigh, and Ryan A. Ulloa of White & Case LLP, Miami, Florida; and Stephen A. Ecenia and J. Stephen Menton of Rutledge Ecenia, P.A., Tallahassee, Florida,

 for Appellants Sarasota Doctor's Hospital, Inc., and Englewood Community Hospital, Inc.

Raymond T. Elligett, Jr., and Amy S. Farrior of Buell & Elligett, P.A., Tampa, Florida; Robert L. Nabors of Nabors, Giblin & Nickerson, P.A., Tallahassee, Florida; and Stephen E. DeMarsh, County Attorney, and Frederick J. Elbrecht, Deputy County Attorney, Sarasota, Florida,

 for Appellee Sarasota County

David A. Wallace of Bentley & Bruning, P.A., Sarasota, Florida,

 for Appellee Sarasota County Public Hospital District