NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

BUCK-LEITER PALM AVENUE            )
DEVELOPMENT, LLC,                  )
                                   )
            Appellant,             )
                                   )
v.                                 )        Case No. 2D15-2879
                                   )
CITY OF SARASOTA,                  )
                                   )
            Appellee.              )
                                   )

Opinion filed March 3, 2017.

Appeal from the Circuit Court for Sarasota
County; Kimberly Bonner, Judge.

Albert J. Tiseo of Goldman, Tiseo &
Sturges, P.A., Port Charlotte, for Appellant.

Morgan R. Bentley, Brian D. Goodrich,
and David A. Wallace of Bentley &
Bruning, P.A., Sarasota; and Robert
M. Fournier of Fournier, Connolly,
Warren & Shamsey, P.A., Sarasota, for
Appellee.

MORRIS, Judge.

        Buck-Leiter Palm Avenue Development, LLC (the developer) appeals a

final order granting summary judgment in favor of the City of Sarasota (the City).  We

reverse because the City was not entitled to summary judgment as a matter of law.

## I. Background

In June 2006, the City requested proposals for the development of City-owned land on Palm Avenue in downtown Sarasota.  In March 2007, the City selected the developer pursuant to the proposal process.  The City and the developer engaged in extensive negotiations, and on November 13, 2007, the City and the developer entered into an Initial Redevelopment Agreement (IRA).

The IRA states that its provisions "shall be carried forth and incorporated into a subsequent final Redevelopment Agreement."  The IRA describes in detail the parties' respective obligations regarding the development project.  It provides that the project will be developed in two phases, with phase I consisting of a 453-space parking structure, a 77,000-square-foot hotel, 18,500 square feet of retail space, and a paved parking area.  Phase II will include 150 condominium units, an additional 6000 square feet of retail space, and an expansion of the parking garage.  The IRA further describes details of the project, such as the operation and maintenance of the project and the sharing of costs and revenues.  The IRA also provides that the developer will lease land from the City and be granted an option to purchase the land, with a formula for the computation of lease payments and the purchase price for the option tract in phase II.  Further, the IRA contains provisions regarding financing of the project with the issuance of bonds, attainable housing units, the developer's payment of taxes, the developer's compliance with code and regulations, the conceptual architectural design approval, terms for disposition of the property, the project schedule, title to the property, and notices.

The IRA also states that "each party shall be entitled to written notice of and the opportunity to cure any alleged defaults" and that "[f]ailure of a party to enforce a covenant or condition contained in this [IRA] shall not be deemed a waiver of any future default or breach, whether or not of a similar character." The IRA further provides that "[i]n the event of any litigation between the parties in respect to this [IRA] or the Redevelopment Agreement, the prevailing party shall be entitled to reasonable attorney's fees and costs." Last, the IRA provides that "[i]n the event that the parties hereto have not approved and executed a final Redevelopment Agreement by February 15, 2007, then this [IRA] shall terminate and shall have no further force and effect."

On March 21, 2008, the City approved a conceptual architectural design for the project. After further extensive negotiations on key issues, on April 7, 2008, the City and the developer executed an Open Issue Term Summary (the summary) that addressed parking, access during phase II construction, infrastructure costs, architecture efforts, and timing. On June 2, 2008, the City acknowledged that significant impediments existed that prevented the parties from arriving at a final agreement, and the City Commission imposed a deadline of July 21, 2008, "as the date to determine if the City and [the developer] can reach" a final agreement. At a special meeting of the City Commission on July 17, 2008, the City Commission voted to accept the City's staff recommendation that the "current redevelopment proposal [is] unacceptable," effectively terminating the negotiations with the City and the developer and the developer's involvement in the project.

In June 2010, the developer filed a complaint against the City for breach of contract, promissory estoppel, and imposition of equitable liens. In June 2012, the trial

- 3 -

court granted the City's motion for summary judgment on the third count. In December 2013, the developer was granted leave to file an amended complaint alleging breach of contract. In the amended complaint, the developer alleged that the terms of the IRA indicate that the IRA was intended to be binding and enforceable by both parties. The developer also alleged that the summary constituted a further binding agreement between the parties. The developer alleged that "[t]hese documents formed a binding contract which required both parties to do certain specified tasks and to negotiate the 'open terms' in good faith to finalize the agreement" and that the City breached the IRA by "voting to terminate discussions and failing to obtain an economic analysis of [the developer's] proposal."

In February 2015, the City filed a motion for summary judgment, arguing that the IRA did not constitute a final, binding contract. The City asserted that there were outstanding issues requiring negotiation and that the IRA was merely an agreement to agree, which is unenforceable as a matter of law. The City also argued that the summary was not binding on the City because the city manager did not have authority to bind the City to a contract and that the summary was not a final contract because it contemplated a final development agreement. The City further contended that even if a contract was created, the developer breached the land lease provision. The developer responded that when all of the evidence is considered in the light most favorable to the developer, the court could not conclude that no contract was formed. The developer argued that if the parties "did not intend to be bound [by the IRA,] there would have been no need for notice provisions, default language and prevailing party attorney's fees in the event of litigation." As for the City's alternative claim that the

developer breached the contract, the developer argued that this was a question of fact to be determined by the jury.

On June 3, 2015, the trial court entered an order granting the City's motion for summary judgment. The trial court ruled that the "undisputed facts and record evidence demonstrate that no contract was formed by virtue of the expired [IRA] and the subsequent [summary]" and that "no breach of contract could have occurred." On July 23, 2015, the trial court entered final judgment in favor of the City.

**II. Analysis**

On appeal, the developer argues that the trial court erred in granting summary judgment because questions of fact exist regarding whether a contract was formed and whether the IRA expired. The developer contends that the trial court found that no contract was formed but also that the IRA had expired; the developer argues that the trial court's ruling is illogical because a contract cannot expire if it was not formed.

We review de novo a trial court's granting of summary judgment. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). A movant is entitled to summary judgment if the pleadings and the summary judgment evidence show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fla. R. Civ. P. 1.510(c). In reviewing a summary judgment ruling, we must consider the evidence in the light most favorable to the nonmoving party, and if the record raises the slightest doubt that an issue might exist, we must reverse the summary judgment. Atria Grp., LLC v. One Progress Plaza, II, LLC, 170 So. 3d 884, 886 (Fla. 2d DCA 2015) (quoting Knowles v.

JPMorgan Chase Bank, N.A., 994 So. 2d 1218, 1219 (Fla. 2d DCA 2008)); Stroud by Schuette v. Strawn, 675 So. 2d 646, 647 (Fla. 2d DCA 1996) (citing Athans v. Soble, 553 So. 2d 1361, 1362-63 (Fla. 2d DCA 1989)).

In its order granting summary judgment, the trial court stated "that no contract was formed by virtue of the expired [IRA] and the subsequent [summary]." But the only indication of an expiration date is found at paragraph 14 of the IRA, which provides: "In the event that the parties hereto have not approved and executed a final Redevelopment Agreement by February 15, 2007, then this [IRA] shall terminate and shall have no further force and effect." The problem with this expiration date is that it predates the signing of the IRA by the parties on November 13, 2007. In opposition to the City's motion for summary judgment, the developer submitted an affidavit of Matthew T. Leiter, agent and manager of the developer. He attested that the February 15, 2007, date in paragraph 14 was "disregarded by the City and the [d]eveloper." The City did not present any evidence to the contrary or any evidence that the parties mutually agreed to and operated under another expiration date. Therefore, in reviewing the evidence in the light most favorable to the developer, the trial court erred in ruling that the IRA had expired.

We also conclude that the trial court erred to the extent that it granted summary judgment on the basis that no contract was formed between the parties. The City argued that the IRA was simply an agreement between the parties to later agree to a binding contract. The City relies on the legal proposition that an agreement to agree is unenforceable as a matter of law. See ABC Liquors, Inc. v. Centimark Corp., 967 So. 2d 1053, 1056 (Fla. 5th DCA 2007). But a review of the IRA leads us to conclude that it

- 6 -

is not merely an agreement to agree in the future. While the language of the IRA clearly demonstrates that the parties intended to enter into another agreement on a future date, the language also demonstrates that the parties agreed upon essential and definite terms and that the parties intended for the IRA to be a binding contract. The IRA is a twenty-three-page document that outlines numerous obligations of the parties regarding various aspects of the development project. The default and attorneys' fees provisions further evidence the parties' intentions that they be bound by the IRA.

The IRA specifically stated that the terms of the IRA will be incorporated into a final agreement and that the final agreement will address other issues including, but not limited to, the amount of the lease payments, temporary access to the parking garage, the developer's parking rights, the responsibility for the cost of offsite improvements, and the definition of the term "net proceeds" as used in the section on attainable housing units. It is clear from this provision that certain details of the project had not been agreed-upon by the parties and would be subject to negotiations at a later date, but this provision itself does not render the entire IRA unenforceable where it is clear that the parties agreed on other essential terms and expressed an intention to be bound by them. See Blackhawk Heating & Plumbing Co. v. Data Lease Fin. Corp., 302 So. 2d 404, 408 (Fla. 1974) ("Even though all the details are not definitely fixed, an agreement may be binding if the parties agree on the essential terms and seriously understand and intend the agreement to be binding on them."); ABC Liquors, Inc., 967 So. 2d at 1057 (citing Blackhawk Heating & Plumbing Co., 302 So. 2d at 408). We express no opinion regarding whether certain provisions themselves are unenforceable

or whether the developer will be able to prove its breach of contract claim against the City.

In sum, the trial court erred in granting summary judgment in favor of the City for the reasons that it stated. Accordingly, we reverse the summary judgment and remand for further proceedings.

WALLACE and ROTHSTEIN-YOUAKIM, JJ., Concur.