DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

————————————————

SARASOTA COUNTY PUBLIC HOSPITAL
DISTRICT and SARASOTA COUNTY,

Petitioners,

v.

VENICE HMA, LLC, D/B/A VENICE
REGIONAL MEDICAL CENTER,
SARASOTA DOCTORS HOSPITAL, INC.,
and ENGLEWOOD COMMUNITY
HOSPITAL,

Respondents.

No. 2D19-3745

————————————————

September 29, 2021

BY ORDER OF THE COURT:

Petitioners' motion for rehearing is granted to the extent that

the prior opinion dated June 16, 2021, is withdrawn, and the

attached opinion is issued in its place.  The only alteration is the

deletion of part of a sentence on page 4.  Respondents' response to

Petitioners' motion, which indicated no objection to this alteration,

is noted.  No further motions for rehearing will be entertained.

I HEREBY CERTIFY THE FOREGOING IS A TRUE COPY OF THE ORIGINAL COURT ORDER.


MARY ELIZABETH KUENZEL, CLERK

DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

————————————————

SARASOTA COUNTY PUBLIC HOSPITAL
DISTRICT AND SARASOTA COUNTY,

Petitioners,

v.

VENICE HMA, LLC, D/B/A VENICE
REGIONAL MEDICAL CENTER,
SARASOTA DOCTORS HOSPITAL, INC.,
AND ENGLEWOOD COMMUNITY
HOSPITAL,

Respondents.

No. 2D19-3745
————————————————

September 29, 2021

Petition for Writ of Prohibition to the Circuit Court for Sarasota
County; Maria Ruhl, Judge.

Raymond T. Elligett, Jr., and Amy S. Farrior of Buell and Elligett,
P.A., Tampa; and Frederick J. Elbrecht of Office of the County
Attorney, Sarasota, for Petitioner, Sarasota County.

David A. Wallace of Bentley Law Firm, P.A., Sarasota, for Petitioner,
Sarasota County Public Hospital District.

Geoffrey D. Smith, Susan C. Smith, Timothy B. Elliott, and Corinne
T. Porcher of Smith and Associates, Melbourne, for Respondent,
Venice, HMA, LLC d/b/a Venice Regional Medical Center.

Stephen A. Ecenia, J. Stephen Menton, Gabriel F. V. Warren, and Jennifer F. Hinson of Rutledge Ecenia, P.A., Tallahassee, for Respondents, Sarasota Doctors Hospital, Inc., and Englewood Community Hospital, Inc.

LUCAS, Judge.

After years of litigation between the plaintiffs below, Venice HMA, Sarasota Doctors Hospital (Doctors Hospital), and Englewood Community Hospital, Inc. (Englewood) (collectively, the "Hospitals"), and the defendant below, Sarasota County (County), over whether the County is statutorily obligated to reimburse the Hospitals for the costs of providing indigent care, the County sought summary judgment on its sovereign immunity defense. The circuit court denied the County's motion for summary judgment. The County then filed a petition for a writ of prohibition before this court, arguing that the circuit court's denial of its motion constitutes an unwarranted exercise of subject matter jurisdiction in violation of the County's immunity. We have considered the County's arguments carefully, but we must deny its petition.

I.

The essential dispute before us is straightforward: who is responsible to pay for indigent health care at the Hospitals since 2008? Resolving that question, though, requires consideration of various state statutes, county ordinances, and the course of conduct between these parties.

In 2003 the Florida Legislature repealed numerous special and local acts enacted between 1949 and 2000 and recodified them as a single Special Act that recreated and provided for the governing of the Sarasota County Public Hospital District (District). *See* ch. 2003-359, § 2, Laws of Fla. Under the Special Act, the District, an "independent special district" contiguous with Sarasota County, is governed by a Hospital Board (Board). Charter § 1.[1] Every month, the Board is authorized to certify to the Sarasota Board of County Commissioners (BOCC) a list of medically indigent persons treated by Board-managed (i.e., public) hospitals during the previous month, together with the itemized charges for those persons' care.

_____

[1] Section 3 of chapter 2003-359, Laws of Florida, is the actual re-formation of the older laws. Within section 3, the legislature used an internal numbering system for the Charter, beginning with section 1. References to *Charter § #(#)* refer to the Charter section number, within section 3 of the session law.

Charter § 8(9).  Within forty-five days the BOCC "shall" remit to the Board the amount requested.  *Id.*  The statute authorizes the Board to impose up to two mils of an ad valorem tax throughout the county.  Charter § 8(8).

The statute includes private hospitals within its ambit as well.  Thus, upon appropriate certification,

> [t]he said Board of County Commissioners shall in like manner reimburse any other hospital in Sarasota County, approved by the State Board of Health, for hospital services rendered to medically indigent persons as herein defined, upon like certification by such hospital and at such rates as shall not exceed those prescribed for such patients by hospitals owned and operated by said Hospital Board.

Charter § 8(9).

Some three years before the Special Act's 2003 recodification, the BOCC had adopted as a county ordinance the special and local acts described above.[2]  *See* Code of Ordinances of Sarasota County, ch. 4, art. II, § 4-24(i), -31, adopted Sept. 13, 2000.  The county

---

[2] In its filings before us, the County suggests that its ordinance adopting the Special Act was "merely" a ministerial act that had no real legal significance.  We reject that dismissive view of what this local legislative act was—an almost verbatim adoption of the Special Act by Sarasota County.

ordinance and the Special Act are virtually identical in content, including the sequence of their presentation.

In 2011, the Hospitals filed complaints against Sarasota County and the District seeking declaratory relief pursuant to chapter 86, Florida Statutes.  The Hospitals alleged that the County had been collecting ad valorem taxes as imposed by the Board but had been refusing to pay their submitted requests for reimbursements under the Special Act, which the Hospitals had begun issuing in late 2008 or early 2009, according to the respective complaints.[3]  They sought a declaration to determine their rights under the Special Act, to declare that the County is obligated to reimburse them for indigent hospital services, to

_____

[3] Specifically, Doctors Hospital and Englewood alleged that beginning in December 2008 and continuing each subsequent month, they submitted invoices to the County for hospitalization charges incurred in treating medically indigent persons under the Special Act.  Doctors Hospital claims that it had submitted invoices for more than $41 million from December 2008 to date, and Englewood alleged that it submitted invoices for more than $18 million.  Venice HMA alleged that beginning in February 2009 and in each subsequent month it submitted invoices to the County for hospitalization charges incurred in treating medically indigent persons under the Special Act.  Its invoices from 2009 to December 2010 total $32 million.  The sum of the Hospitals' invoices, we are informed, now exceeds half a billion dollars.

declare that the County is obligated to reimburse the Hospitals for their prior invoices, and to grant any other relief the circuit court deemed appropriate. The County raised various affirmative defenses, including sovereign immunity, and several counterclaims, including a challenge to the constitutionality of the Special Act.

In 2012, the County and District jointly sought summary judgment, focusing solely on their argument that the Special Act violated the Florida Constitution's provision against special laws that grant a privilege to a private corporation. *See* art. III, § 11(a)(12), Fla. Const. The trial court granted the joint motion and entered judgment in favor of the County and the District. This court affirmed and issued an opinion in which we held that the Special Act did indeed grant an unconstitutional special privilege not shared by hospitals elsewhere in the state. *See Venice HMA, LLC v. Sarasota County*, 198 So. 3d 23, 24 (Fla. 2d DCA 2015). On review, the Florida Supreme Court reversed this court. *See Venice HMA, LLC v. Sarasota County*, 228 So. 3d 76 (Fla. 2017). The supreme court explained that the relevant entities for comparison, for purposes of article III, section 11(a)(12), were hospitals located in Sarasota County. *Id.* at 82 ("Because the special law only applies

6

to Sarasota County, we must limit our comparisons to Sarasota County."). Since all hospitals within the county were granted the same reimbursement privilege, the reimbursement provision of the Special Act was not unconstitutional. *Id.* at 84.

After the case was remanded back to the circuit court, the County tried a new tack. In April of 2018, the County filed another motion for summary judgment, this time arguing that although the Special Act may be constitutional it could not be lawfully enforced against the County. The County argued that only a general law (which, it contended, the Special Act is not) or an "express written contract" could waive the County's sovereign immunity. The Hospitals countered that the Special Act, when read together with separate legislation, effectively waived sovereign immunity. Further, the Hospitals argued that the enactment of the Special Act, when considered in conjunction with their providing indigent healthcare services in reliance upon the Special Act's payment directions, created an express contract that could be enforced notwithstanding the County's claim of sovereign immunity. After a hearing, the circuit court entered an order denying the motion on August 3, 2018. In its order, the circuit court observed:

7

It is undisputed that the County has previously reimbursed hospitals in Sarasota County for the provision of indigent care. There are genuine issues of material fact in dispute relative to the facts and circumstances surrounding these past payments as well as whether the County has historically reimbursed hospitals, including those operated by the District or any of the Plaintiffs, for costs of indigent care under the Special Act.

As cited in the Plaintiff's Response, if Defendants truly believed that the instant action was barred by sovereign immunity, they would have pursued dismissal or summary judgment on that basis prior to spending over six years litigating their counterclaims and participating in protracted appeals. The County acknowledged in their Motion, citing *Fla. Highway Patrol v. Jackson,* [238 So. 3d 430] (Fla. 1st DCA [] 2018), that "Sovereign immunity is immunity *from suit,* not just liability and should be expeditiously addressed to prevent unnecessary litigation time and expense." The fact that the County and District expended "litigation time and expense" in pursuing their counterclaims all the way to the Florida Supreme Court begs against finding now that the instant claim i[s] barred by sovereign immunity.

The case proceeded with limited discovery. The County renewed its motion for summary judgment, arguing that there was no general law or written contract waiving sovereign immunity. Addressing the circuit court's apparent concern that past reimbursement constituted waiver, the County conceded that it had made prior reimbursement payments but argued that those

8

payments did not waive sovereign immunity; again, according to the County, only a general law or a written contract could do so.

And again, on September 10, 2019, the circuit court denied the County's renewed motion for summary judgment.

> It is clear to the [c]ourt that summary judgment cannot be entered on this basis, as there remains considerable dispute as to material facts. It appears to the [c]ourt that the County is, indeed, attempting to "recycle" its previously argued claim of sovereign immunity. In particular, there remain[] genuine disputes as to previous payments made by the County to the private hospitals and as to which legislative authority authorized the previous payments.

The County now urges our court to prohibit the circuit court from allowing the case to be litigated any further.

## II.

Our path through the parties' arguments begins, unfortunately, in rather tall weeds. It does so because the County's choice of extraordinary writs, prohibition, has a complicated history with respect to the defense of sovereign immunity.[4] So we have fashioned our analysis in two parts.

---

[4] An added misfortune is that much of this analysis is likely no longer pertinent. As of January 23, 2020, Florida Rule of Appellate Procedure 9.130(a)(3) was amended to include nonfinal orders that "deny a motion that . . . asserts entitlement to sovereign immunity."

9

In this part of the opinion, we will examine what the writ of prohibition is, what it is used for, and why the courts have been circumspect about extending its reach to address nonfinal orders. We will canvas how the courts have construed immunity claims in the context of prohibition—which is, admittedly, a less than clear area of jurisprudence. In part III of the opinion, we will change the focus to consider the merits of the petition in the framework of certiorari. We ultimately conclude that the County is not entitled to relief in either prohibition or certiorari.

A.

"Prohibition is an extraordinary writ, a prerogative writ, extremely narrow in scope and operation, by which a superior court, having appellate and supervisory jurisdiction over an inferior court . . . may prevent such inferior court or tribunal from exceeding jurisdiction or usurping jurisdiction over matters not

---

*See In re Amendments to Fla. Rule of Appellate Procedure 9.130*, 289 So. 3d 866, 867 (Fla. 2020) (adopting rule 9.130(a)(3)(F)(iii)). We, however, are constrained to view the County's challenge through an extraordinary writ because the version of rule 9.130(a)(3) in effect when the circuit court entered the subject order and the County filed its petition only authorized appeals of nonfinal orders that determined "as a matter of law, a party is not entitled to sovereign immunity."

10

within its jurisdiction."  *English v. McCrary*, 348 So. 2d 293, 296 (Fla. 1977).  The writ is "very narrow in scope, to be employed with great caution and utilized only in emergencies. . . .  It is preventive and not corrective in that it commands the [the lower tribunal] not to do the thing which the supervisory court is informed the lower tribunal is about to do."  *Id.* at 296-97.

As its name implies, a writ of prohibition bars any further action by a lower tribunal.  *Rich v. State*, 311 So. 3d 126, 129 (Fla. 2d DCA 2020) ("When an appellate court issues a writ of prohibition to a lower tribunal, it means just that: the court below will be prohibited from acting further.").  Restraining a court from exercising its constituted power to consider a claim or defense—that is, taking an unresolved case away from a court—is not an act that should be taken lightly in our system of adjudication.  Prohibition was never meant to be a substitute for appellate review.  *See Fla. Dep't of Trans. v. Miami-Dade Cnty. Expressway Auth.*, 298 So. 3d 1261, 1263 (Fla. 1st DCA 2020) ("[A] writ of prohibition is not warranted where there is an adequate remedy at law . . . and should not be used in place of an appeal." (citing *Pullins v. Candelaria*, 291 So. 3d 168, 169 (Fla. 1st DCA 2020))).  In other

words, "[p]rohibition lies to prevent an inferior tribunal from acting in excess of jurisdiction but not to prevent an erroneous exercise of jurisdiction." *English*, 348 So. 2d at 297; *see also PPI, Inc. v. Fla. Dep't of Bus. & Pro. Regul., Div. of Pari-Mutuel Wagering*, 917 So. 2d 1020, 1022 (Fla. 1st DCA 2006) (citing *English* for this proposition). Since circuit courts are intended to be courts of general jurisdiction, "nothing is intended to be outside their jurisdiction except that which *clearly* and *specially* appears so to be." *English*, 348 So. 2d at 297 (emphasis added). In keeping with its narrow purpose (and its powerful repercussions) the extraordinary writ of prohibition has historically been invoked only when it could be said an "emergency" has arisen. *Id.* ("Prohibition will be invoked only in emergency cases to forestall an impending present injury where person seeking writ has no other appropriate and adequate legal remedy." (citing *Joughin v. Parks*, 147 So. 273 (Fla. 1933))).

Our supreme court has been somewhat circumspect about the use of prohibition to address immunity claims. For example, in *Mandico v. Taos Construction, Inc.*, 605 So. 2d 850, 854 (Fla. 1992), the Florida Supreme Court receded from its earlier decision in *Winn-Lovett Tampa v. Murphree*, 73 So. 2d 287 (Fla. 1954), and in

12

so holding clarified that not every question over immunity automatically implicates an emergency issue of circuit court jurisdiction. In *Murphree*, 73 So. 2d at 288, an employer sought prohibition after the circuit court denied its motion to dismiss an employee's personal injury claim on the basis of workers' compensation immunity. According to the employer, the circuit court was without jurisdiction to consider the claim. *Id.* The *Mandico* court acknowledged that *Murphree* had held as much but then stated that *Murphree* constituted "an unwarranted extension of the principle of prohibition." *Mandico*, 605 So. 2d at 854. The court went on to explain that the use of prohibition in *Murphree* was unwarranted because "[a] person has a right to file a personal injury action in circuit court, and the court has jurisdiction to entertain the suit." *Id.* The employer's assertion of workers' compensation immunity was an affirmative defense, and its validity could only be determined in the course of the litigation. *Id.* The circuit court had jurisdiction to decide that question, even if it decided the question wrongly. *Id.* Thus, the *Mandico* court found that prohibition could not be used to raise the defense of workers' compensation immunity. *Id.*

13

Some twenty years later, the Florida Supreme Court issued two opinions on the same day addressing the use of common law writs to review nonfinal orders involving claims of sovereign immunity. *See Keck v. Eminisor,* 104 So. 3d 359 (Fla. 2012); *Citizens Prop. Ins. Corp. v. San Perdido Ass'n,* 104 So. 3d 344 (Fla. 2012). In *San Perdido,* 104 So. 3d at 345, the court considered whether an appellate court should review a nonfinal order denying a claim of sovereign immunity in a bad faith action against Citizens Property Insurance Corporation, a state-created entity. The court noted that the issue arose "in the context of the broader question of when appellate courts should use common law writs to review non-final orders involving claims of immunity" and whether the court should expand the list of appealable nonfinal orders. *Id.* The *San Perdido* court did not resolve that broader issue but concluded that "a writ of prohibition is not available to challenge a non-final order denying a motion to dismiss based on a claim of sovereign immunity where sovereign immunity has been partially waived." *Id.* at 346.

In reaching this decision, the court observed "that non-final orders in the course of trial court proceedings are generally

14

reviewed on appeal at the conclusion of the case." *Id.* at 348.

Certain nonfinal orders, however, may be immediately appealable under rule 9.130, and in limited circumstances, "a party may use a petition for certiorari to seek review of a non-final order not otherwise appealable." *Id.* With that backdrop, the court then addressed whether Citizens could seek review of a nonfinal order denying its motion to dismiss through a writ of prohibition. *Id.* at 349. Looking, in part, to its decisions in *Department of Education v. Roe*, 679 So. 2d 756 (Fla. 1996), and *Mandico*, the *San Perdido* court concluded that "[b]ased on a review of our case law, the plain answer to that question is no." *San Perdido*, 104 So. 3d at 349. Because the trial court had jurisdiction to determine the question of sovereign immunity, prohibition was unavailable. *Id.* at 351.

In *Keck*, 104 So. 3d at 360-61, the court considered the rephrased question of great public importance of whether an appellate court could review a nonfinal order denying a transit authority trolley driver's motion for summary judgment based on a claim of individual immunity under section 768.28(9)(a), Florida Statutes (2005). Because such an order did not fall under the existing version of rule 9.130, the First District had considered the

15

issue in certiorari and denied the petition without reaching its merits. *Id.* at 362. The Florida Supreme Court took an entirely different approach. The court eschewed consideration of the case through any extraordinary writ and instead proceeded to review the merits of the dispute as it would under rule 9.130.[5] Since the only issue to be resolved—whether the employee's company was a "state agenc[y] or subdivision[]" under section 768.28(2)—was an issue of law, the court in *Keck* determined that the individual employee was entitled to sovereign immunity and quashed the First District's opinion. *Id.* at 369.

In a separate concurrence in *Keck*, Justice Pariente observed that appellate courts had been using extraordinary writs to address

---

[5] In the *Keck* opinion, the court requested the appellate rules committee to craft an amendment to rule 9.130 to reflect what it had just held, *id.* at 366, similar to what it had done when it reviewed the denial of summary judgment on a claim of qualified immunity in *Tucker v. Resha*, 648 So. 2d 1187, 1190 (Fla. 1994) ("Thus, we answer the certified question in the affirmative and hold that an order denying summary judgment based upon a claim of qualified immunity is subject to interlocutory review to the extent that the order turns on an issue of law. Because this holding will require a change in the Florida Rules of Appellate Procedure, we request the Florida Bar Appellate Court Rules Committee to submit a proposed amendment that will address the rule change mandated by this decision.").

different types of immunity claims in a somewhat inconsistent manner. *Id.* at 369. That was probably a fair assessment of the state of the law. *See generally Jefferson v. State*, 264 So. 3d 1019, 1023 (Fla. 2d DCA 2018) (distinguishing "Stand Your Ground" immunity rulings that are determined on the merits, which are reviewed through prohibition, versus claimed procedural errors, which are reviewed in certiorari); *Seminole Tribe of Fla. v. Ariz*, 67 So. 3d 229, 232 (Fla. 2d DCA 2010) (granting a petition for writ of prohibition because the petitioner established it was entitled to tribal sovereign immunity); *Seminole Tribe of Fla. v. McCor*, 903 So. 2d 353, 357–59 (Fla. 2d DCA 2005) (using a writ of certiorari to review the denial of a motion to dismiss involving tribal sovereign immunity); *Brevard County v. Morehead*, 181 So. 3d 1229, 1232-33 (Fla. 5th DCA 2015) (issuing prohibition to address a claim of sovereign immunity); *Miami–Dade County v. Rodriguez*, 67 So.3d 1213, 1216-19 (Fla. 3d DCA 2011) (issuing a writ of certiorari to review the denial of a motion to dismiss on sovereign immunity defense), *quashed by Rodriguez v. Miami-Dade County*, 117 So. 3d 400, 402 (Fla. 2013) (holding that the sovereign immunity claim "is not reviewable by the appellate courts through a petition for writ of

17

certiorari because there is no irreparable harm and because there are essential facts in dispute"); *Fuller v. Truncale*, 50 So. 3d 25, 27–28 (Fla. 1st DCA 2010) (using a writ of certiorari to review the denial of a motion to dismiss involving judicial immunity); *Citizens Prop. Ins. Corp. v. San Perdido Ass'n*, 46 So. 3d 1051, 1053 (Fla. 1st DCA 2010) (concluding that a writ of certiorari was improper to review the denial of a motion to dismiss involving sovereign immunity); *Citizens Prop. Ins. v. La Mer Condo. Assoc.*, 37 So. 3d 988, 988 (Fla. 5th DCA 2010) (issuing prohibition because "Citizens is immune from first-party bad faith claims pursuant to sections 627.351(6)(r)1. and 624.155(1)(b)1., Florida Statutes"), *disapproved by Citizens Prop. Ins. Corp. v. San Perdido Ass'n*, 104 So. 3d 344, 351 (Fla. 2012) (disapproving of *La Mer* to the extent that it "used the vehicle of a writ of prohibition to review a claim of sovereign immunity where a limited waiver of sovereign immunity applies").

On one occasion, our court granted a prohibition petition to prevent a circuit court from hearing a case that implicated a Native American Tribe's tribal immunity. *See Ariz*, 67 So. 3d at 232. In *Ariz*, we stated that since the Tribe had established tribal sovereign immunity "the trial court [was] without subject matter jurisdiction

18

in this matter." *Id.* Our opinion in *Ariz* did not purport to lay down a binding rule that *every* claim of *any* kind of immunity implicated a want of subject matter jurisdiction that could be addressed in prohibition. *Accord Mandico,* 605 So. 2d at 853-54.

Indeed, prior to the *Ariz* opinion, our court had reviewed tribal immunity orders through certiorari. *See McCor,* 903 So. 2d at 357 ("We have previously exercised our common law certiorari jurisdiction to review a trial court order denying a motion to dismiss where the motion was based on the assertion that the trial court lacked subject matter jurisdiction because the suit was barred by tribal sovereign immunity." (first citing *Seminole Tribe of Fla. v. Houghtaling,* 589 So. 2d 1030, 1031 (Fla. 2d DCA 1991), then citing *Seminole Police Dep't v. Casadella,* 478 So. 2d 470, 471 (Fla. 4th DCA 1985))).[6] In *McCor,* we found that certiorari jurisdiction was

---

[6] Interestingly, *McCor* included a "cf." citation to *Miccosukee Tribe of Indians v. Napoleoni,* 890 So. 2d 1152, 1153-54 (Fla. 1st DCA 2004), a First District opinion that had addressed tribal sovereign immunity through prohibition. *McCor,* 903 So. 2d at 357. *McCor* appeared to reject that approach as the very next sentence following that citation was: "Certiorari jurisdiction exists in this context because the inappropriate exercise of jurisdiction by a trial court over a sovereignly-immune tribe is an injury for which there is no adequate remedy on appeal." *Id. McCor* also likened tribal sovereign immunity to qualified immunity in civil rights cases,

available to review the trial court's order because the inappropriate exercise of jurisdiction (as opposed to a lack of jurisdiction) was an injury for which there was no adequate remedy on appeal when sovereign immunity "involve[d] 'immunity from suit rather than a mere defense to liability' " and would be lost if the case were erroneously permitted to go to trial. *Id.* at 358 (quoting *Tucker v. Resha*, 648 So. 2d 1187, 1189 (Fla. 1994)).

In sum, different courts have considered different claims of immunity through different writs. The County asserts, almost as if it were an axiom, that prohibition is the appropriate vehicle to review the denial of summary judgment on its sovereign immunity defense. In our view, the case law is more nuanced.

B.

But we need not lay down a definitive pronouncement on this issue today because, as explained below, there is a sharp factual dispute that precludes relief in prohibition. *See Mandico*, 605 So. 2d at 854 (a writ of prohibition is not appropriate "to test the

---

though only for the limited point that both defenses involved immunity from suit rather than a "mere defense to liability." *Id.* at 357-58 (quoting *Tucker*, 648 So. 2d at 1189).

correctness of a lower tribunal's ruling on jurisdiction where the existence of jurisdiction depends on controverted facts that the inferior tribunal has jurisdiction to determine"); *Godfrey v. Reliance Wholesale, Inc.*, 68 So. 3d 930, 932 (Fla. 3d DCA 2011) ("Unless the petitioner can show, however, that (1) there are no disputed facts and (2) the circuit court lacked subject matter jurisdiction, a writ of prohibition is unavailable."); *Nolet v. State*, 920 So. 2d 1214 (Fla. 1st DCA 2006) (denying prohibition where there was a disputed material fact over the validity of a criminal defendant's waiver of her right to speedy trial).

### 1.

In response to the County's claimed sovereign immunity, the Hospitals have argued that the enactment of chapter 2003-359, Laws of Florida, and chapter 4, article II, sections 4-24(i) and 4-31 of the Sarasota County Code of Ordinances, combined with their provision of services and remittance of bills in reliance thereon, created an express contract between the County and the Hospitals. As they correctly point out, a governmental entity can be deemed to have waived its sovereign immunity when it enters into an express contract with another party. *See Pan-Am Tobacco Corp. v. Dep't of*

21

*Corrs.*, 471 So. 2d 4, 5 (Fla. 1984) ("We therefore hold that where the state has entered into a contract fairly authorized by the powers granted by general law, the defense of sovereign immunity will not protect the state from action arising from the state's breach of that contract."); *see also Fla. Dep't of Transp. v. Schwefringhaus*, 188 So. 3d 840, 846 (Fla. 2016) ("[W]e find that the breach-of-contract principles in *Pan-Am* prohibit the DOT from using sovereign immunity to avoid suit for its breach of the crossing agreement.").

The County does not dispute the Hospitals' legal contention, but rather whether the facts of this case can implicate it. According to the County, because there is no "express written contract" between these parties, there was no waiver of its sovereign immunity.[7] Since the Hospitals "never produced an express written contract" in the course of discovery, the County maintains it is

_____

[7] The County and the Hospitals acknowledge that Florida law does not generally recognize waiver of sovereign immunity through implied contracts, whether in law or in fact. *See Brevard v. Miorelli Eng'g*, 703 So. 2d 1049, 1050 (Fla. 1997) ("We would also emphasize that our holding here is applicable only to suits on express, written contracts into which the state agency has statutory authority to enter." (quoting *Pan-Am Tobacco*, 471 So. 2d at 6)); *City of Ft. Lauderdale v. Israel*, 178 So. 3d 444, 447-48 (Fla. 4th DCA 2015).

22

entitled to summary judgment as a matter of law.  What the County seems to imply in its phrasing of its argument is that without a unified, finalized, typed, paginated document, signed by the parties in a suitable place (or something to that effect), there can be no enforceable express contract.

But that is an overly crimped view of what makes an express contract.  While express contracts are frequently set forth in that kind of manner, they do not have to be.  *See Waite Dev., Inc. v. City of Milton*, 866 So. 2d 153, 155 (Fla. 1st DCA 2004) ("Where an agreement is arrived at by words, oral or written, the contract is said to be 'express.' " (quoting *Com. P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 385 (Fla. 4th DCA 1997))); *Barakat v. Broward Cnty. Hous. Auth.*, 771 So. 2d 1193, 1195 (Fla. 4th DCA 2000) (enforcing employment contract against Broward County Housing Authority that was created through a Broward County Housing Resolution); *Ransom v. Fernandina Beach Chamber of Com.*, 752 So. 2d 118, 119 (Fla. 1st DCA 2000) (recognizing breach of unilateral contract claim against golf tournament contest sponsors who refused to award a pickup truck prize to a contestant who shot a hole-in-one); *A & M Eng'g Plastics, Inc. v. Energy Saving*

23

*Tech., Co.*, 455 So. 2d 1124, 1125 (Fla. 4th DCA 1984) (finding that contract for plastic parts and molding comprised of a written quotation and subsequent shipments); *Williams v. Cordis Corp.*, 30 F.3d 1429, 1432 (11th Cir. 1994) ("[A] 'pension plan is a unilateral contract which creates a vested right in those employees who accept the offer it contains by continuing in employment for the requisite number of years.' " (quoting *Hurd v. Ill. Bell Tel. Co.*, 234 F.2d 942, 946 (7th Cir. 1956))).

Here, the Hospitals claim that the County's sovereign immunity was waived by an express contract formed through the enactment of a special act of legislation and the subsequent incorporation of that statute as a county ordinance, coupled with the Hospitals' provision of indigent healthcare services and remittance of bills. That may be a somewhat unique manner of forming an express contract, but it is certainly not unheard of. In *Waite*, 866 So. 2d at 154, a developer brought a breach of contract claim against a city based upon the city's enactment of an ordinance adopting the developer's annexation petition. The annexation petition and ordinance required the city to provide water and sewer lines to the developer's property; after furnishing the

24

lines to the first phase of the property's development, the city indicated it would not do so for the second phase. *Id.* The circuit court dismissed the complaint based on the city's claim of sovereign immunity. *Id.* at 155. The First District reversed and provided a succinct summary of how express contracts may be made: " 'Where an agreement is arrived at by words, oral or written, the contract is said to be 'express.' ' . . . Several writings may constitute a valid and binding written contract when they evidence a complete meeting of the minds of the parties and an agreement upon the terms and conditions of the contract." *Id.* (quoting *Com. P'ship 8098 Ltd.*, 695 So. 2d at 385).

We cannot agree that what the Hospitals allege to be a contract—written, legislative enactments directing remuneration to private hospitals in exchange for services—would be beyond the ken of what Florida law would recognize for purposes of waiving sovereign immunity. *Cf. Nowlin v. Nationstar Mortg., LLC*, 193 So. 3d 1043, 1045 (Fla. 2d DCA 2016) ("A contract is made when the three elements of contract formation are present: offer, acceptance, and consideration." (quoting 11 Fla. Jur.2d *Contracts* § 25 (2016))). At bottom, then, the circuit court was not faced with a pure

25

question of law, but whether a potentially valid express contract was, in fact, formed. There was a disputed question of material fact on that issue, and that precluded summary judgment. *See generally Buck-Leiter Palm Ave. Dev., LLC v. City of Sarasota*, 212 So. 3d 1078, 1081-82 (Fla. 2d DCA 2017) (reversing summary judgment where there were factual disputes as to whether an initial redevelopment agreement was enforceable); *Turton v. Singer Asset Fin. Co.*, 120 So. 3d 635, 640 (Fla. 4th DCA 2013) ("The core issue in this case is whether the transmission of the Plan to Turton constituted a continuing offer to avoid Turton's resignation and whether Turton's continued employment was a continuing acceptance of the offer. Because the intent of the parties is in question, this case cannot be properly disposed of by summary judgment."); *Smith v. Royal Auto. Grp., Inc.*, 675 So. 2d 144, 152 (Fla. 5th DCA 1996) ("The question of whether or not the parties' negotiations produced a binding agreement is a question of intent, which in turn is a question of fact.").

## 2.

Moreover, the County's claim of a prohibition "emergency" rings hollow in this case. The County waited nearly six years to

bring its claim of sovereign immunity for the circuit court's consideration. The County engaged in extensive, protracted litigation on other issues before advancing sovereign immunity as a purported jurisdictional bar. Such a prolonged delay on the part of the County belies what prohibition has historically demanded: an emergency that requires immediate intervention from a superior tribunal. *See L.T. v. State,* 296 So. 3d 490, 496 (Fla. 1st DCA 2020) (observing that prohibition should be employed with "great caution" and "invoked only in emergency cases to forestall an impending present injury" where there is "no other appropriate and adequate legal remedy." (first quoting *State ex rel. Turner v. Earle*, 295 So. 2d 609, 611 (Fla. 1974), then quoting *English*, 348 So. 2d at 297)). Issuing a writ of prohibition would not be an appropriate exercise of our extraordinary writ jurisdiction under the facts of this case. *See Topps v. State,* 865 So. 2d 1253, 1257 (Fla. 2004) ("Since the nature of an extraordinary writ is not of absolute right, the granting of such writ lies within the discretion of the court.").[8]

---

[8] The parties do not suggest we should apply the current version of rule 9.130 retroactively to obtain jurisdiction, and given the Florida Supreme Court's direction in *In re Amendments to Florida Rule of Appellate Procedure 9.130*, 289 So. 3d at 867—that

In sum, we conclude the County is not entitled to a writ of prohibition. But because we recognize the jurisprudence surrounding the intersection between extraordinary writs and sovereign immunity remains less than clear, and in the interest of providing a full review of the County's arguments, we will also consider its claims in certiorari.

## III.

"It is well settled that to obtain a writ of certiorari, there must exist '(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3) that cannot be corrected on postjudgment appeal.' " *Reeves v. Fleetwood Homes of Fla.*, 889 So. 2d 812, 822 (Fla. 2004) (quoting *Bd. of Regents v. Snyder*, 826 So. 2d 382, 387 (Fla. 2d DCA 2002)). "The last two elements are jurisdictional and must be analyzed before the court may even consider the first element." *High Five Prods., Inc. v.*

---

the amendment "shall become effective immediately upon the release of this opinion [January 23, 2020]"—we would decline to do so if they had. *Cf. Love v. State*, 286 So. 3d 177, 188 (Fla. 2019) (observing that "Stand Your Ground" statute's procedural amendment only applied prospectively, in part, because "the legislation on its face is plainly forward-looking").

*Riddle*, 286 So. 3d 890, 890 (Fla. 2d DCA 2019) (quoting *Gift of Life Adoptions v. S.R.B.*, 252 So. 3d 788, 790 (Fla. 2d DCA 2018)).

The Florida Supreme Court squarely addressed the issue of certiorari jurisdiction over sovereign immunity defenses in *Rodriguez v. Miami-Dade County*, 117 So. 3d 400 (Fla. 2013).  In *Rodriguez*, a business owner sued Miami-Dade County when he was shot four times by a police officer responding to a burglary alarm at the owner's business.  *Id.* at 402.  The trial court denied the county's motion for summary judgment, but the Third District Court of Appeal held that the county was entitled to sovereign immunity and quashed the trial court's order through a writ of certiorari.  *Id.* at 403.  The supreme court in *Rodriguez* emphasized "the extremely narrow scope of a district court's ability to use its certiorari jurisdiction to address a non-final order where the trial court denied the defendant's claim that the suit was barred by sovereign immunity." *Id.* at 404.

> Consistent with our recent holdings in *Citizens* and *Keck*, we reiterate that the continuation of litigation and any ensuing costs, time, and effort in defending such litigation does not constitute irreparable harm.  Thus, the use of certiorari review is improper in such an instance.

29

*Id.* at 405. The *Rodriguez* court concluded that the Third District could not review the merits of Miami-Dade County's sovereign immunity defense in certiorari. *Id.* at 408-09; *see also Beach Cmty. Bank v. City of Freeport*, 150 So. 3d 1111, 1112-13 (Fla. 2014) (reaffirming that certiorari was not an appropriate basis to review the denial of a city's motion to dismiss on the basis of sovereign immunity but addressing the merits under amended rule 9.130(a) because the availability of sovereign immunity turned on an issue of law).

Bound by the Florida Supreme Court's directions in *Rodriguez* and *City of Freeport*, we would similarly conclude that the denial of the County's motion for summary judgment in this case does not constitute irreparable harm of the type that would entitle the County to a writ of certiorari. *See also Fla. Fish & Wildlife Conservation Comm'n v. Jeffrey*, 178 So. 3d 460, 465 (Fla. 1st DCA 2015) ("By contrast, any harm resulting from the erroneous denial of FWCC's motion for summary judgment is not irreparable because, by virtue of the waiver of sovereign immunity in section 768.28, Florida Statutes, FWCC has only limited immunity from the liability that may result from the Respondent's suit, not immunity

from the suit itself."). But following the example of the court in *City of Freeport,* we will nevertheless consider whether the denial of summary judgment in this case constitutes a departure from the essential requirements of law.

Simply put, it does not. As we discussed at length in part II(B), there are genuine, material disputed facts in this record over whether a contract was formed and whether the County waived its sovereign immunity. As such, the circuit court's denial of the County's motion for summary judgment did not depart from the essential requirements of law. *See, e.g., Ondrey v. Patterson,* 884 So. 2d 50, 55 (Fla. 2d DCA 2004) (denying certiorari petition because there was a disputed issue of material fact that precluded summary judgment on correction officer's claim of qualified immunity); *Stephens v. Geoghegan,* 702 So. 2d 517, 525 n.4 (Fla. 2d DCA 1997) ("[W]hen a court denies summary judgment in the face of disputed issues of material fact, it commits no legal error, let alone a departure from the essential requirements of law."); *Butler v. Dowling,* 750 So. 2d 674, 675 (Fla. 4th DCA 1999) (denying certiorari petition where the testimony of the arrestee/plaintiff created a dispute as to whether the arresting police officer would be

entitled to qualified immunity from an excessive force claim); *Dep't of Health & Rehab. Servs. v. Miller*, 413 So. 2d 96, 96 (Fla. 1st DCA 1982) (recognizing that the court has entertained petitions for writs of certiorari to review interlocutory orders concerning sovereign immunity but declining to issue the writ because "there may be factual matters which remain to be developed at trial bearing on the issue of sovereign immunity").

We would deny the County's petition if we were to exercise our certiorari jurisdiction.

## IV.

We conclude that the facts of this case do not warrant a writ of prohibition. Under *Rodriguez* and *City of Freeport*, we would decline to exercise our certiorari jurisdiction to reach the County's claims. Even if we had certiorari jurisdiction, we would not find that the circuit court departed from the essential requirements of law when it denied the County's motion for summary judgment on the ground of sovereign immunity. In our view, the circuit court was quite correct to deny the County's motion for summary judgment on this record.

"Oftentimes, the applicability of the sovereign immunity waiver is inextricably tied to the underlying facts, requiring a trial on the merits." *Dep't of Educ. v. Roe*, 679 So. 2d 756, 758 (Fla. 1996). So it is with the case at bar.

Petition denied.

SILBERMAN, J., Concurs specially with opinion.
ATKINSON, J., Concurs in result.

SILBERMAN, Judge, Specially concurring.

With one exception, I concur in Judge Lucas's majority opinion. The majority opinion correctly observes that both prohibition and certiorari have been used, somewhat inconsistently, as avenues for review of sovereign immunity issues. And the opinion properly concludes that genuine issues of material fact remain in dispute and that the County has failed to establish entitlement to relief by way of prohibition or certiorari. However, I do not join in part II.B.2 of the opinion which asserts that the County's "prohibition 'emergency' rings hollow" due to the County's failure to have the trial court resolve the immunity issue in the first instance. Majority op. at 26.

While the County asserted sovereign immunity in its answer to the complaints, the County (together with the District) initially sought and obtained summary judgment on the basis that the Special Act was unconstitutional. This court affirmed, but the Florida Supreme Court reversed. *See Venice HMA, LLC v. Sarasota County*, 228 So. 3d 76, 84 (Fla. 2017). When the case returned to the trial court for further proceedings, the County then moved for summary judgment based on sovereign immunity.

34

The County may have been better advised to first seek a determination of the immunity issue rather than a determination of the constitutionality of the Special Act. But once the trial court ruled against the County on the immunity issue, the County was entitled to review of that decision. And while prohibition is a limited remedy, it has not been eliminated as a remedy for a trial court's acting in excess of its jurisdiction over a sovereign that is immune from suit.

I recognize that in *English v. McCrary*, 348 So. 2d 293, 297 (Fla. 1977), the Florida Supreme Court stated that "[p]rohibition will be invoked only in emergency cases to forestall an impending present injury where person seeking writ has no other appropriate and adequate legal remedy." But the "emergency" at issue was the exclusion of the press from a court proceeding. *Id.* at 295. The court observed that "[p]rohibition lies to prevent an inferior tribunal from acting in excess of jurisdiction but not to prevent an erroneous exercise of jurisdiction." *Id.* at 297. In holding that the case did not warrant the issuance of a writ of prohibition, the court focused on the fact that the situation was not one "where the trial court was exceeding its jurisdiction or was without jurisdiction." *Id.* at 299.

35

Rather, the case involved at most "a possible abuse of discretion." *Id.*

In the present case there is no dispute that the trial court had jurisdiction to determine whether sovereign immunity barred further proceedings against the County, including whether the County had waived its immunity. Had the court determined that the County established its immunity, the court's jurisdiction over the County would have come to an end unless this court, on review, concluded that the trial court's determination was incorrect. And, after resolving any factual disputes, had the trial court erroneously concluded that the County was not entitled to immunity, then review in this court by petition for writ of prohibition would be entirely proper to prevent the trial court "from acting in excess of jurisdiction." *Id.* at 297.

The County's decision to seek a ruling on its constitutionality challenge enabled the trial court to exercise its jurisdiction to consider that challenge. However, the County's failure to first seek a ruling as to sovereign immunity did not establish the trial court's unbridled jurisdiction over the County, particularly where the trial court did not determine any issue of waiver. Thus, an erroneous

36

denial of sovereign immunity would not alleviate the nature of the "emergency" because the trial court would be exercising jurisdiction that it does not have over a sovereign that is immune from suit. And prohibition remains as a recognized remedy when a trial court exercises jurisdiction over a sovereign that is entitled to immunity from suit. *See, e.g., Seminole Tribe of Fla. v. Ariz*, 67 So. 3d 229, 232 (Fla. 2d DCA 2010); *Brevard County v. Morehead*, 181 So. 3d 1229, 1233 (Fla. 5th DCA 2015).

Thus, while I do not agree with the majority opinion that the " 'emergency' rings hollow," majority op. at 26, I nevertheless agree that the County has not established entitlement to relief by way of extraordinary writ because factual issues remain to be resolved in the trial court.

ATKINSON, Judge, Concurring in result.

I agree that the petition should be denied, but I would treat it as one for a writ of certiorari and deny it for the reasons explained in part II.B.1. of Judge Lucas's opinion.

————————————————

Opinion subject to revision prior to official publication.